UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TRISHA PRESTON, Individually and as Parents and
Natural Guardians of AP, an infant,
MICHAEL PRESTON, Individually and as Parents and
Natural Guardians of AP, an infant,

                                            Plaintiffs,

                                                                                         DECISION AND ORDER

                                                                                         11-CV-6420L

                                            v.

HILTON CENTRAL SCHOOL DISTRICT,
BRIAN BARTALO,
DANA BOSHNACK,
BRAD HELMER,
TAIT LOE,
ANN FREY,
ANN MARIE MAC DONALD,
EILEEN COWEY,

                                            Defendants.
_____

       This action is brought by plaintiffs on behalf of their infant son, A.P., and asserts claims pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§794 et seq. ("Section 504"), the Americans with Disabilities Act, 42 U.S.C. §§12101 et seq. ("ADA"), Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681 et seq. ("Title IX"), the Fourteenth Amendment to the United States Constitution, U.S. Constit. amend. XIV, §1 ("Fourteenth Amendment") via 42 U.S.C. §1983 ("Section 1983"), the New York Human Rights Law, N.Y. Exec. Law §§290 et seq. ("Human Rights Law"), New York Civil Rights Law §§40-c and 40-d, and common law of New York State. Plaintiffs allege that the defendants, the Hilton Central School District (the "District"), Hilton Central High School Principal Brian Bartalo ("Bartalo"), District employee Dana Boshnack ("Boshnack"), teacher Brad Helmer ("Helmer"), teacher Tait Loe ("Loe"), special education aide Ann Frey ("Frey"), special education teacher Ann Marie MacDonald ("MacDonald"), and District

employee Eileen Cowey ("Cowey") (collectively "defendants"), acted with deliberate indifference to bullying and harassment of A.P. by other students, based on his disability and gender. The District has moved to dismiss the action pursuant to Fed. R. Civ. Proc. 12(b)(6) (Dkt. #8), and plaintiffs have cross-moved to amend the complaint (Dkt. #10).

For the reasons that follow, plaintiffs' cross motion to amend is granted, and the defendants' motion to dismiss is granted in part, and otherwise denied.

## BACKGROUND

A.P. is a seventeen-year-old student residing in the Hilton Central School District, who was enrolled at the Hilton Central High School during the 2009-2010 school year. According to the amended complaint, A.P. has a learning disability in the form of Asperger's Syndrome.

Plaintiffs contend that throughout the 2009-2010 school year, A.P. was routinely bullied by students in a Basic Electronics Class at Hilton High School, who harassed and mocked him on a daily basis, including calling him, "fucking retard," "asshole," "faggot," and "bitch," and subjecting him to frequent comments of a sexual nature, as well as comments disparaging his cognitive abilities, such as, " Fuck you, you autistic piece of shit." Plaintiffs also allege that the classroom teacher, Helmer, used profanity and shared inappropriately sexual stories and anecdotes in class. Plaintiffs state that they e-mailed Bartalo concerning the harassment as early as October 10, 2009 and were assured by Bartalo that the incidents would be investigated and that Helmer would be admonished. Helmer apologized to the plaintiffs shortly thereafter, and Bartalo assured plaintiffs that A.P.'s one-on-one aide, Frey, would attend the Basic Electronics class with him for the remainder of the semester as a deterrent to further bullying. However, according to plaintiffs, Frey's presence has no affect on the students' continued sexual comments and insults toward A.P., and Frey stopped accompanying him to class after a few weeks.

Plaintiffs allege that neither Bartalo nor Helmer took any further action to deter the harassment of A.P. or to discipline the students involved. In November 2009, plaintiffs complained

about the continuing harassment to MacDonald, a special education teacher, and Cowey. Plaintiffs met with Bartalo in December 2009, and e-mailed MacDonald in January 2010, to ask why Frey was no longer attending classes with A.P. Plaintiffs also contacted Helmer to report that students were continuing to ridicule A.P. Notwithstanding these contacts, plaintiffs allege that the defendants took no meaningful action.

After the Basic Electronics class concluded mid-way through the school year, A.P. enrolled in a Construction class. According to the amended complaint, the environment in the Construction class was even more abusive, and from the start of classes on February 1, 2010, other students in that class openly mocked A.P., calling him "gay," "homo," "retard," "asshole," "faggot," "bitch" and "loser" during virtually every class. Once again, the District arranged for Frey to attend classes with A.P., but her presence was ineffective at curbing the harassment and as before, she stopped accompanying A.P. to classes after a few weeks. Thereafter, A.P. was allegedly subjected to constant vulgar and/or offensive language directed at his perceived mental capacity and/or sexual preference, including being asked whether he watched pornography, was gay, or masturbated, and whether he would perform oral sex on another male student "for $10." On one occasion, A.P. was asked by a male classmate, "can I put my dick in your ass?" Students in the class threw small objects such as pencils and small pieces of wood at A.P., and drew sexually explicit pictures on the blackboard. Plaintiffs allege that A.P. complained to the Construction class teacher, Loe, who was present during much of the harassment, but that Loe took no action except to have the offensive drawings erased, and did not discipline or rebuke A.P.'s tormentors. Plaintiffs allege that they complained to Loe, MacDonald, Cowey, and Bartalo, each of whom cautioned that "teens will be teens" but promised they would address the problem, yet did nothing to stop or punish the ongoing harassment. Plaintiffs contend that near the end of the school year, the daily bullying of A.P. was being perpetrated by approximately half of the students in Loe's Construction class.

On May 6, 2010, the students allegedly surrounded A.P. in the classroom and openly ridiculed a model home project he had completed, but Loe, who was present, did not intervene.

Later, a student falsely accused A.P. of smashing that student's model home project. A.P.'s parents alerted MacDonald about the bullying conduct of other students toward A.P., and informed him that as a result, A.P. was having increasing difficulty completing assignments, and was developing serious emotional issues. The following day, A.P. found himself emotionally and mentally unable to complete the school day, and disclosed to his parents several occasions of harassment that he had not previously shared.

Plaintiffs thereafter met with Bartalo and MacDonald, and learned that AP's grades had dropped by 40% in two of his classes, which plaintiffs attributed to the bullying and harassment of A.P. A.P.'s parents agreed to send A.P. back to school for the remainder of the year. Two return attempts were made, but proved unsuccessful. Plaintiff allege that A.P. continued to be sexually harassed and insulted by other male students each time he attempted to return to the classroom, to the point where he was unable to function emotionally or academically. In an attempt to ensure that A.P. received credit for his course work, plaintiffs located a qualified individual who was able to administer A.P.'s final exams to him outside and independent from the school. A.P. twice attempted to take the exams, but allegedly experienced emotional breakdowns that made him unable to complete them.

Plaintiffs attempted to have A.P. accepted into the Communications and Social Skills program for children with Asperger's syndrome, but found that if A.P. was accepted to the program, he could not enroll until January 2011, and would be required to attend Hilton Central High School in the interim, an option plaintiffs determined to be a non-viable, given A.P.'s refusal and apparent psychological inability to return. (Dkt. #11-1 at ¶101).

Plaintiffs now bring this action on A.P.'s behalf, contending that they have suffered economic damages in their efforts "to obtain a proper education for [A.P.] and to assist in his recovery from his emotional and psychological injuries." (Dkt. #11-1 at ¶105).

## DISCUSSION

**I.     Plaintiffs' Cross Motion to Amend the Complaint**

In opposition to the defendants' motion to dismiss, plaintiffs have cross moved to amend the complaint to clarify the bases for their claims, withdraw certain state law claims against the individual defendants, and add claims of violations of N.Y. Exec. Law §296(4) against the District. In general, leave to amend is to be freely granted. *See generally* Fed. R. Civ. Proc. 15(a). Here, the changes to the amended complaint are modest and for the most part non-substantive, and defendants have fully addressed and responded to the changes in the proposed amended complaint in their reply papers supporting their motion to dismiss. Thus, in the interests of justice and in order to facilitate a more orderly disposition of the pending motion to dismiss, plaintiffs' cross motion to amend is granted, and the Court will proceed to analyze defendants' motion to dismiss with reference to the amended complaint (Dkt. #11-1).

**II.    Standard for Fed. R. Civ. Proc. 12(b)(6) Motion**

In deciding a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), the Court's review is limited to the complaint, and those documents attached to the complaint or incorporated therein by reference. *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996). The Court must "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). Nonetheless, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**III.    Plaintiffs' Claims of Disability-Based Discrimination Against the District, under the ADA and Section 504**

Plaintiffs purport to assert claims of discrimination against the District pursuant to the ADA and Section 504. Specifically, plaintiffs contend that the District, by and through the actions of its agents, was deliberately indifferent to the disability-related harassment of A.P. by other students, such that the District acquiesced in A.P.'s harassment, and became liable for it.

Claims under Title II of the ADA and section 504 of the Rehabilitation Act are analyzed identically. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). Under both statutes, schools are required to provide a free appropriate public education through special education and related services. *See, e.g.*, 34 C.F.R. § 104.33; 28 C.F.R. § 35.103. In contrast to the IDEA, which is designed to address incorrect or erroneous special education plans, the ADA and Rehabilitation Act address discrimination against disabled students.[1] *See French v. New York State Dep't of Educ.*, 2010 U.S. Dist. LEXIS 103772 at *32-*33 (N.D.N.Y. 2010), *aff'd*, 2011 U.S. App. LEXIS 22416 (2d Cir. 2011).

To make out a *prima facie* case under the ADA or Rehabilitation Act, a plaintiff must show "(1) that [he] is a qualified individual with a disability; (2) that the defendants are subject to [the pertinent statute]; and (3) that [he] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability." *Harris v. Mills*, 572 F.3d 66, 73-74 (2d Cir. 2009). Denial of "the opportunity to participate in or benefit from defendants' services" does not require that the student be physically prevented from access: "[r]ather, a plaintiff must establish . . . harassment [by] students

---

[1] The defendants argue at length that the instant action is most appropriately characterized as one arising under the Individuals with Disabilities Education Act, 20 U.S.C. §1400 et seq. ("IDEA"), and is therefore subject to dismissal based on plaintiffs' failure to comply with the its exhaustion requirements. The Court disagrees. While the plaintiffs allege that the denial of a free appropriate public education ("FAPE") to A.P. was a collateral result of the defendants' alleged conduct, I find that the gravamen of the plaintiffs' claims is not the denial of a FAPE to A.P., but a request for compensatory damages stemming from the District's alleged indifference to the disability-based and gender-based discrimination suffered by A.P. Plaintiffs' allegations extend beyond the scope of the IDEA and the remedies it offers.

that is so severe, pervasive, and objectively offensive, and that so undermines and distracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650-651 (1999).

The District primarily urges dismissal of plaintiffs' Section 504 claims on the grounds that plaintiffs have not sufficiently alleged that the defendants acted solely "by reason of [A.P.'s] disability." However, the Supreme Court has made clear that in the similar context of peer-on-peer harassment cases under Title IX that individual defendants need not be, themselves, motivated by discriminatory animus: rather, liability for discrimination may be imputed to teachers and administrators for students' peer-on-peer harassment where those defendants displayed "deliberate indifference" to the underlying harassment, where the harassment is itself motivated by discriminatory animus. *Davis*, 526 U.S. 629 at 643-644. Courts in the Second Circuit and elsewhere have subsequently applied the Supreme Court's holding in *Davis* to peer-on-peer harassment cases under the ADA and Section 504. *See e.g., S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445, 454-454 (6th Cir. 2008) (applying the *Davis* "deliberate indifference" requirement to peer-on-peer harassment claims under the ADA and Section 504); *K.M. v. Hyde Park Central Sch. Dist.*, 381 F. Supp. 2d 343, 359 (S.D.N.Y. 2005) (same).

In applying *Davis*, the Second Circuit has observed that a school's liability for harassment by and against students may be established where "the defendant's indifference was such that the defendant intended the discrimination [e.g., discriminatory peer-on-peer harassment] to occur. It is not necessary to prove that the defendant fully appreciated the harmful consequences of that discrimination . . . [i]nstead, deliberate indifference can be found when the defendant's response to known discrimination 'is clearly unreasonable in light of the known circumstances.'" *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999) (addressing peer-on-peer harassment claim under Title IX), *quoting Davis*, 526 U.S. 629 U.S. at 648.

Here, plaintiffs allege that A.P. was regularly harassed and bullied by his classmates on the basis of his disability. The alleged harassing conduct included the use of insults which specifically referenced the perceived nature of A.P.'s disability, such as "fucking retard" and "autistic piece of shit," as well as objects being thrown at him, and ridicule concerning his work in class, from September 2009 through May 2010.[2] Plaintiffs allege that the cumulative effect of the harassment was that A.P. discontinued attending school, became profoundly disturbed, and was so emotionally crippled that he was unable to return to class or complete final exams. Plaintiffs state that on multiple occasions beginning in October 2009 and continuing throughout the school year, they notified multiple District employees of the ongoing harassment of A.P. by his peers, through telephone conversations, e-mail correspondence and sit-down meetings, and that those individuals nonetheless failed to act, acquiesced in the harassment of A.P. and imposed no discipline on A.P.'s harassers. In light of these allegations, I find that the plaintiffs have sufficiently stated a claim that the defendants acted with deliberate indifference to the harassment of A.P. by his peers because of his disability, and that the defendants' alleged conduct had the effect of denying A.P. access to educational opportunities. Accordingly, the District's motion to dismiss plaintiffs' ADA and Section 504 claims is denied.

**IV.    Plaintiffs' Title IX Claims of Gender-Based Discrimination Against the District**

Plaintiffs also allege that the District, by the actions of the individual defendants, violated Title IX. Plaintiffs emphasize that their Title IX claim is not based on A.P.'s disability, perceived

---

[2] As another district court in this Circuit has observed in summarizing the lengthy history of school bullying case law and commentary, "[s]tudies have shown that students with a disability, whether it is visible or non-visible, are subject to increased bullying that is often directed at the disability. These students are also at more risk for bullying directed at factors other than their disability. Harassing conduct may take many forms, including verbal acts and name-calling, as well as nonverbal behavior, such as graphic written statements, or conduct that is physically threatening, harmful, or humiliating." *T.K. v. New York City Dep't of Educ.*, 779 F. Supp. 2d 289, 303 (E.D.N.Y. 2011) (internal citations omitted).

sexual orientation or gender stereotyping, but rather upon the defendants' alleged deliberate indifference to the same-sex harassment of A.P. by other students on the basis of his male gender.

A plaintiff must allege four factors in order to state a claim of school district liability for gender-based peer-on-peer harassment under Title IX. He must allege that: (1) he was harassed on the basis of gender; (2) that the harassment was so severe, pervasive and objectively offensive that it altered his education; (3) the school district had actual notice of the gender-based harassment; and (4) the school was deliberately indifferent to it. *See T.K.*, 779 F. Supp. 2d 289 at 314, *citing Davis*, 526 U.S. 629 at 640-653. *See also McSweeney v. Bayport Bluepoint Central Sch. Dist.*, 2012 U.S. Dist. LEXIS 39557 at *37 (E.D.N.Y. 2012); *Doe v. Coventry Bd. of Educ.*, 630 F. Supp. 2d 226, 233 (D. Conn. 2009).

> Nonetheless, in assessing allegations of gender-based peer-on-peer harassment:
>
> [c]ourts . . . must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults . . . in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. Rather, . . . damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect.

*Davis,*, 526 U.S. 629, 651-652.

Here, plaintiffs' allegations fall short of stating the first element of the claim, that A.P. experienced harassment on the basis of his male gender. Initially, the fact that A.P.'s harassers asked him embarrassing sexual questions and used terms with sexual connotations, such as such as "gay," "homo," "faggot" and "bitch," is insufficient to suggest that A.P. was harassed on the basis of his gender, as opposed to his disability, his perceived sexual orientation or some other reason. While the court must avoid making "broad generalizations" about a speaker's motives for using language with discriminatory connotations, particularly when used in an impolitic juvenile context, the words and acts allegedly directed toward A.P. by other students do not indicate an anti-male bias even when taken at face value. *Patenaude v. Salmon River Cent. Sch. Dist.*, 2005 U.S. Dist. LEXIS 29066 at

*15-*18 (N.D.N.Y. 2005) (observing in the context of a summary judgment motion that although misogynist slurs suggest gender-based harassment against a female student, the court "must be careful . . . not to make broad generalizations" and should instead examine the language in light of the "constellation of surrounding circumstances, expectation and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed").

The melange of insults allegedly hurled at A.P. included facially anti-female ("bitch") and anti-homosexual ("homo," "faggot") pejoratives, comments which sarcastically implied that A.P. was homosexual, and mockery of A.P.'s disability with varying degrees of specificity ("retard" and "autistic piece of shit"). Plaintiffs do not allege that A.P. was subjected to any anti-male verbiage or overt sexually harassing conduct, such as unwelcome physical advances, or otherwise plausibly contend that A.P. was targeted for harassment *because of his male gender*.

The District's motion to dismiss plaintiffs' Title IX claim of deliberate indifference to gender-based harassment is granted.

## V.     Plaintiffs' Gender-Based Equal Protection Claims Against the District and the Individual Defendants

Plaintiffs assert Section 1983 claims for violations of their rights under the Equal Protection Clause of the Fourteenth Amendment, which provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Constit. amend. XIV, §1. In order to maintain a Section 1983 action against a municipality for the unconstitutional acts of employees below the policymaking level, a plaintiff must establish that a municipal custom or policy caused the violation of her constitutional rights. *See Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995), *citing Monell v. Dep't of Social Servs*., 436 U.S. 658, 694 (1978).[3]

---

[3] Plaintiffs' emphasize that their equal protection claim is not a "class of one" claim, but rather one based on the districts' alleged custom of ignoring same-sex sexual harassment by and against male students, but not ignoring it with regard to female students. (Dkt. #10-1 at 11-12).

Courts have repeatedly held that teachers, administrators, and boards of education can be held liable under the Fourteenth Amendment if they have been deliberately indifferent to discriminatory harassment of a student at school by other children. *See Gant*, 195 F.3d 134 at 140; *Davis*, 526 U.S. 629; *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1249-51 (10th Cir. 1999). However, "[t]o succeed on an equal protection claim in the harassment context, a student must show that he was afforded a lower level of protection as opposed to other students, and that this lower level of protection was the result of his [protected status]," here, A.P.'s male gender. *T.K.*, 779 F. Supp. 2d 289 at 316. While a plaintiff must ultimately demonstrate that each particular defendant's indifference was such that he or she intended the underlying discriminatory harassment to occur, for purposes of analyzing a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), a defendant's deliberate indifference to severe harassment can be sufficiently stated by allegations that his or her actions or inaction were unreasonable in light of known circumstances. *See Gant*, 195 F.3d 134 at 141.

Plaintiffs' claims here are insufficient to state a cause of action for deliberate indifference to gender-based discrimination. Although the amended complaint contains boilerplate allegations that the defendants treated male same-sex sexual harassment complainants differently from female complainants, and that the District maintained a policy or practice to that effect, plaintiffs have failed to set forth any supporting facts that would render these conclusory allegations plausible, such as facts identifying similarly-situated students or describing the treatment of female complainants by the defendants in like circumstances. Plaintiffs concede as much, and protest that they are unable to allege any facts concerning "similarly situated" persons because "[t]he facts supporting th[at] allegation are in the exclusive possession of [d]efendants." (Dkt. #10-1 at 12).

However, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations [and the] factual allegations must be sufficient to support necessary legal conclusions." *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (dismissing equal protection claim as insufficiently stated, where plaintiffs allege in conclusory fashion that similarly-situated persons were treated differently, but fail to allege specific

examples of treatment of similarly-situated persons); *Gorokhovsky v. City of New York*, 2011 U.S. Dist. LEXIS 54941 at *20 (S.D.N.Y. 2011) (dismissing discriminatory failure-to-promote claim based on age and national origin because, "[w]hile employees' exact ages and national origins may be peculiarly within the possession of the employer, [p]laintiff does not identify any individuals promoted in his stead or provide any basis for his belief that those hired were younger or non-minority . . . or [present] any other facts that would imply he was denied the promotions on account of his age or ancestry. Plaintiff's mere belief is insufficient without specific factual allegations to enable the Court to evaluate his information and belief assertions") (internal brackets and citations omitted). Regardless of whether certain details are within the exclusive possession of the defendants, in order to pass muster under Fed. R. Civ. Proc. 12(b)(6), plaintiffs must set forth some facts which might form a plausible basis for their belief that similarly-situated students who suffered peer-on-peer harassment were ever treated differently from A.P., as a result of his protected status – here, his male gender. *See generally Twombly*, 550 U.S. 544 at 555. Given the absence of any such allegations in the amended complaint, plaintiffs' Fourteenth Amendment equal protection claims are dismissed.

**VI.   Plaintiffs' State Law Claims**

Plaintiffs also assert state law negligence and N.Y. Human Rights Law §296(6) claims against the District and defendant Helmer, negligent hiring and supervision claims against the District, and discrimination and harassment claims in violation of N.Y. Civil Rights Law §40-c and §40-d against all of the defendants. The amended complaint also adds a claim against the District for violation of N.Y. Human Rights Law §296(4).

Initially, all of plaintiffs' state law claims against all of the individual defendants are dismissed, as plaintiffs filed to comply with the prerequisite of serving them with a Notice of Claim pursuant to N.Y. Gen. Mun. Law §50-e and N.Y. Educ. Law §3813. *See e.g.*, *Hale v. Scopac*, 74 A.D.3d 1906 (4th Dept. 2010).

Plaintiffs' discrimination claims against the District pursuant to N.Y. Exec. Law §296(4) are also dismissed, as that statute is inapplicable to school districts, which are not "education corporations" subject to the statute. *See Camac v. Long Beach City Sch. Dist.*, 2011 U.S. Dist. LEXIS 79997 at *56 (E.D.N.Y. 2011); *Pratt v. Indian River Cent. Sch. Dist.*, 2011 U.S. Dist. LEXIS 32596 at *30 (N.D.N.Y. 2011); *East Meadow Union Free Sch. Dist. v. New York State Division of Human Rights*, 65 A.D.3d 1342, 1343 (2d Dept. 2009).[4]

Plaintiffs' claims under N.Y. Exec. Law §296(6) are likewise dismissed, as the dismissal of the §296(4) claims defeats the plausibility of any allegation that the defendants aided, abetted, incited, compelled or coerced others to commit a separate violation of the Human Rights Law. *See e.g., JG v. Card*, 2009 U.S. Dist. LEXIS 85372 at *35-*36 (S.D.N.Y. 2009) (dismissing §296(6) claim against individual defendants, where plaintiff's §296(4) claim was dismissed and plaintiffs failed to allege any other primary violations of §296).

Accordingly, of plaintiffs' state law claims asserted in the amended complaint, only the claims against the District for negligence, negligent hiring and supervision, and violation of N.Y. Civil Rights Law §§ 40-c and 40-d remain.

## CONCLUSION

For the foregoing reasons, plaintiffs' cross-motion to amend the complaint (Dkt. #8) is granted, defendants' motion to dismiss the amended complaint (Dkt. #10) is granted in part, and plaintiffs' Title IX claim, Fourteenth Amendment claim, claims pursuant to N.Y. Exec. Law

---

[4] Although the Court recognizes that at least one New York state court has reached the opposite conclusion, *Matter of Ithaca City Sch. Dist. v. New York State Division of Human Rights*, 87 A.D.3d 268 (3d Dept. 2011), the Court defers to more consistent vein of authority in the district courts of this Circuit, some of which post-dates *Ithaca*.

§§296(4) and 296(6), and all of plaintiffs' claims against all of the individual defendants, are dismissed. To the extent that the motion seeks to dismiss the remainder of plaintiffs' claims, it is denied.

    IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       July 11, 2012.